**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| INTERNATIONAL UNION OF OPERATING ENGINEERS, LOCAL 150, AFL-CIO, | ) ) ) | |
| *Plaintiff*, | ) ) | No. 23 C 15257 |
| v. | ) ) | Hon. Virginia M. Kendall |
| BARRINGTON EXCAVATING, LLC, | ) ) ) | |
| *Defendant*. | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

On October 24, 2023, Plaintiff International Union of Operating Engineers, Local 150, AFL-CIO ("Local 150") brought an action to enforce two arbitration awards entered against Sinnett Excavating, Inc.—which it contends is currently doing business as Defendant Barrington Excavating, LLC—pursuant to § 301 of the Labor-Management Relations Act of 1947, 29 U.S.C. § 185. (Dkt. 1). The dispute stems from a 1995 Memorandum of Agreement ("MOA") between Local 150 and Sinnett Excavating adopting the terms of a collective bargaining agreement ("CBA"). In May 2021, Scott Sinnett Sr. retired and dissolved his company Sinnett Excavating. Barrington Excavating then formed in its place, owned by his son Scott Sinnett II. In March 2023, Local 150 became aware of Barrington Excavating's use of non-bargaining employees in apparent violation of the CBA. Local 150 then brought a grievance to the Joint Grievance Committee ("JGC"), who rendered two awards against Sinnett Excavating. On October 24, 2023, Local 150 proceeded to bring suit to enforce the arbitration awards. (*Id.*) Barrington Excavating now moves to dismiss the complaint for failure to state a claim. (Dkt. 12). For the following reasons, the motion to dismiss [12] is denied.

1

**BACKGROUND**

Three generations of Sinnetts have been in the excavating business since the 1960s. The second Sinnett—Scott Sinnett Sr.—owned Sinnett Excavating, Inc. from 1984 until it dissolved on May 28, 2021. (Dkt. 1 ¶ 7; Dkt 1-1 at 99). On August 18, 1995, Local 150 and Sinnett Excavating signed a MOA that adopted the CBA between Local 150 and the Mid-American Regional Bargaining Association, otherwise known as the Illinois Heavy, Highway and Underground Agreement. (Dkt. 1 ¶ 5). The MOA bound Sinnett Excavating, its successors, and assignees to the CBA and stated that it would "continue in effect from year to year . . . unless notice of termination or amendment is given in the manner provided herein." (Dkt. 1-1 at 154). The MOA required Sinnett Excavating to give Local 150 three months' notice of its intent to terminate the MOA. (*Id.*) Further, the CBA states that the employer shall give written notice of, in part, the "[s]ale, assignment, transfer, or other change in name or ownership" and "name and business organization of the successor" that shall also be bound. (Dkt. 1-1 at 14; CBA Art. I, § 10).

On February 5, 2021, Sinnett Sr. gave written notice to Local 150 of his intention to "clos[e] his business" and therefore terminate the MOA between Local 150 and Sinnett Excavating, effective May 31, 2021. (Dkt. 14-1 at 2). The Local 150 general counsel accepted the notice, stating, "since you are retiring and going out of business you need not negotiate a [successor] agreement." (Dkt. 14-2 at 2).

Two weeks after Sinnett Excavating dissolved, Barrington Excavating formed under the ownership of Sinnett's son, Scott Sinnett II. (Dkt. 1 ¶ 8; Dkt. 1-1 at 102–06). Barrington Excavating shared the same business entity address as Sinnett Excavating, located at 27W929 Commercial Avenue, Barrington, Illinois. (Dkt. 1 ¶¶ 7–8; Dkt. 1-1 at 104). Further, Barrington Excavating continued to use the same equipment as Sinnett Excavating, with excavating trucks

labelled "Sinnett Excavating" on the side or "slopp[ily] remov[ed]." (Dkt. 19 at 3; *see* Dkt. 1-1 at 113, 115).

In March 2023, Local 150 and Barrington Excavating had a dispute regarding Barrington Excavating's use of non-bargaining unit employees to perform work at a jobsite in Lake Zurich, Illinois. (Dkt. 1 ¶ 10). After being unable to resolve the dispute at the proscribed steps one or two under the CBA, Local 150 submitted a written grievance to the JGC. (*Id.* at ¶ 11). The notice of the written grievance, hearing notice, and JGC determination were addressed to Sinnett Sr. at the now-defunct Sinnett Excavating but sent via email to Barrington Excavating and an attorney representative. (Dkt. 1-1 at 127, 134; Dkt. 19 at 4).

At the hearing, the JGC considered evidence regarding the name change from Sinnett Excavating to Barrington Excavating and Local 150's contention that the company "maintained substantially identical operations, business purpose, locations, contact information, equipment, supervision, services, common financial control, and centralized control of labor relations." (Dkt. 1 ¶ 12). On June 7, 2023, the JGC determined that Sinnett Excavating (1) was a party to the CBA with Local 150; (2) Barrington Excavating violated the CBA in using non-bargaining unit employees to perform work covered by the CBA; (3) the CBA was still in force; and (4) Barrington Excavating owed Local 150 $165,716.61 in lost wages and benefits. (*Id.*; Dkt 1-1 at 146–48). Neither Sinnett Excavating nor Barrington Excavating attended the JGC proceedings and have not complied with the JGC decision. (Dkt 1 ¶ 14).

On October 24, 2023, Local 150 brought suit to enforce the awards. On December 11, 2023, Barrington Excavating moved to dismiss the complaint for failure to state a claim, arguing that the JGC did not have jurisdiction over a nonparty and nonsignatory to the CBA or proceedings, Sinnett Sr. terminated the CBA in 2021, and Local 150's claims are barred by the doctrine of

laches. (Dkt. 12). Alternatively, Barrington Excavating requests the Court dismiss Local 150's claims to the extent it seeks an award over $50,000. (*Id.*)

## LEGAL STANDARD

To survive a motion to dismiss for failure to state a claim, the complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[A] plaintiff must allege 'enough facts to state a claim that is plausible on its face.'" *Allen v. Brown Advisory, LLC*, 41 F.4th 843, 850 (7th Cir. 2022) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Ashcroft v. Iqbal*, 566 U.S. 662, 678 (2009)). The Court accepts the well-pleaded factual allegations in the plaintiff's complaint as true, "drawing all reasonable inferences in his favor." *Id.* (citing *W. Bend. Mut. Ins.*, 844 F.3d at 675). The Court "also consider[s] any documents attached to and integral to the complaint as part of the [plaintiff's] allegations." *Gociman v. Loyola Univ. of Chi.*, 41 F.4th 873, 878 (7th Cir. 2022). Yet, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are not enough. *Oakland Police & Fire Ret. Sys. v. Mayer Brown, LLP*, 861 F.3d 644, 649 (7th Cir. 2017) (quoting *Iqbal*, 556 U.S. at 678). The complaint's factual content must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

## DISCUSSION

### I.     Timeliness, Waiver, and Effect of the JGC Proceedings

Though Barrington Excavating brings a motion to dismiss, its primary challenges to the complaint focus on the arbitrability and enforceability of JGC award to an alleged nonparty and nonsignatory to the CBA. These challenges should have been brought in a motion to vacate. Bringing challenges to the awards in the form of a response to the complaint is no substitute for a

4

motion to vacate. *See Painters' Dist. Council No. 30 v. Rock-It Interiors, Inc.*, 190 F. Supp. 3d 803, 811 (N.D. Ill. 2016). Thus, resolving the motion to dismiss requires the Court to address the threshold question of whether Barrington Excavating may raise these arguments.

A challenge to an arbitration award must be raised within 90 days of the award itself.[1] *See Sullivan v. Lemoncello*, 36 F.3d 676, 681 (7th Cir. 1994); *Plumbers' Pension Fund, Loc. 130 v. Domas Mech. Contractors, Inc.*, 778 F.2d 1266, 1268 (7th Cir. 1985). As the court noted in *Chauffeurs, Teamsters, Warehousemen and Helpers, Local Union Number 135 v. Jefferson Trucking Company, Inc.*:

> [T]he purpose of the short periods prescribed in the federal and state arbitration statutes for moving courts to vacate an award is to accord the arbitration award finality in a timely fashion. . . . [T]his policy would seem to condemn the conduct of the defendant who ignored an award disfavorable to it, failed to move to vacate the award, and then sought to be given its day in court when the plaintiff brought suit in frustration to have the award enforced. If the defendant's defenses were of such vital importance to it, the defendant nevertheless had an opportunity to raise them in the manner contemplated by statute.

628 F.2d 1023 (7th Cir. 1980), *cert. denied*, 449 U.S. 1125 (1981).

The Seventh Circuit reaffirmed this point in *International Union of Operating Engineers, Local 150, AFL-CIO v. Rabine*, noting that "the purpose of [the] statute of limitations is to ensure speedy resolution of labor disputes" and that it is improper to blow past the 90-day window in order to just bring a "collaterally raised failure of arbitral jurisdiction." 161 F.3d 427, 432 (7th Cir. 1998); *Merryman Excavation, Inc. v. Int'l Union of Operating Engineers, Loc. 150, AFL-CIO*, 2009 WL 2515628, at *9 (N.D. Ill. Aug. 17, 2009), *aff'd sub nom. Merryman Excavation, Inc. v. Int'l Union of Operating Engineers, Loc. 150*, 639 F.3d 286 (7th Cir. 2011) ("To indulge a party's

---

[1] Courts treat a joint committee's award as an arbitration award for most purposes. *See Int'l Union of Operating Engineers, Loc. 150, AFL-CIO v. Ryan & Assocs., Inc.*, 2020 WL 6287406 at *3 (N.D. Ill. Oct. 27, 2020) (collecting cases). Further, the Court determines the statute of limitations for § 301 of the LMRA by reference to a comparable action in the forum state, the Illinois Arbitration Act. *Id.* (citing *Teamsters Loc. No. 579 v. B & M Transit, Inc.*, 882 F.2d 274, 276 (7th Cir. 1989)); *Sullivan*, 36 F.3d at 681. The Illinois Arbitration Act provides a 90-day statute of limitations for challenging an arbitration award. 710 ILCS 5/12(b).

late arguments that were not brought to the attention of the arbitrator below would undermine the purpose of arbitration; namely, to be a cost-effective method of resolving labor disputes.").

Accordingly, failure to raise an argument before a joint grievance committee "waives that argument in collateral proceedings to enforce or vacate the arbitration award." *Ganton Techs., Inc. v. Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am., U.A.W., Loc. 627*, 358 F.3d 459, 462 (7th Cir. 2004). It is important to note that the challenges Barrington Excavating raises in its motion to dismiss do not relate to subject matter jurisdiction—which can never be waived—but "rather as a [waivable] challenge to the merits of the opposing party's complaint." *Rabine*, 161 F.3d at 431.

A company faces great risks in pursuing a strategy to ignore the JGC proceedings and then collaterally attack them outside of the 90-day limitations window. In such a case, the company "can only hope [the court] will conclude that the absence of a valid CBA destroyed the arbitrator's jurisdiction over the union's complaints." *Rabine*, 161 F.3d at 431. For example, the Seventh Circuit, in *Sullivan v. Gilchist*, disregarded arguments regarding the validity of the CBA and jurisdiction of the arbitrator when brought outside the 90-day limitations window. 87 F.3d 867 (7th Cir. 1996). Similarly, in *Rabine*, "[t]he contract may have been invalid, or the clause inapplicable to the dispute, but when [the defendant] and his companies made the decision to sit on their collective hands, they waived the right to challenge the outcome later." 161 F.3d at 432. Therefore, the court concluded that not appearing before the JGC nor moving to vacate the arbitration award in 90 days "was a high-stakes gamble, and it is not one that this court commends to future defendants in arbitration disputes." *Id.* at 433.

Since *Rabine*, this District has consistently held that companies with notice of arbitration proceedings and awards who fail to challenge them within the applicable limitations period,

"render[] the award final." *Sullivan*, 87 F.3d at 871; *see e.g.*, *Ryan & Assocs., Inc.*, 2020 WL 6287406, at *2 (confirming arbitration award when undisputed evidence existed that defendant received notice of award and did not move to vacate within 90 days); *Int'l Union of Operating Engineers, Loc. 150, AFL-CIO v. Grosshening, Inc.*, 2022 WL 1556379, at *4 (N.D. Ill. May 17, 2022) (same and collecting cases); *Altounian Constr., Inc. v. Admin. Dist. Council 1 of Ill. of Int'l Union of Bricklayers & Allied Craftworkers*, 2021 WL 698478, at *3 (N.D. Ill. Feb. 23, 2021) (same); *Rock-It Interiors, Inc.*, 190 F. Supp. 3d at 812 (same); *I.B.E.W. Loc. No. 531 v. TGB Unlimited Inc.*, 2016 WL 3906690, at *3 (N.D. Ind. July 16, 2016) (same); *Ill. Dist. Council No. 1 of the Int'l Union of Bricklayers & Allied Craftworkers v. Christoffer*, 2006 WL 2583724, at *4 (N.D. Ill. Sept. 5, 2006) ("[A] non-signatory or non-party defendant to the CBA at issue in the arbitration must still raise any challenge to the defendant's status as a legally bound entity to the CBA . . . before the [arbitrator] or in the 90 days after the rendering of the arbitration award"); *Cent. States, Se. & Sw. Areas Pension Fund v. Sara Lee Bakery Grp., Inc.*, 660 F. Supp. 2d 900, 910 (N.D. Ill. 2009) (same).

Barrington Excavating posits that enforcement of the 90-day limitation requirement here would permit a union to enforce a JGC award against any unnamed party who did not show up to the JGC proceedings. But that is not what the precedent outlined above holds. A party who had *notice* of the proceedings, did not participate, and then did not move to vacate within 90 days will face the financial penalty. In the end, "[t]he rule is a simple one: If you receive notice of an adverse decision in a federal labor arbitration, challenge it within 90 days or expect to pay up." *Rabine*, 161 F.3d at 434.

Here, Local 150 has plead sufficient facts to suggest that Barrington Excavating had notice of the JGC proceedings. Local 150 alleges that it sent the notice of the written grievance, JGC

proceedings, and JGC determination to Sinnet Sr. at Sinnett Excavating, Barrington Excavating, and its attorney representative. Further, Local 150's exhibits to the complaint show the letters were sent to 27W929 Commercial Avenue, Barrington, Illinois, the address of both Sinnett Excavating and later, Barrington Excavating. (*See, e.g.*, Dkt. 1-1 at 149). Additionally, the fact that Sinnett Excavating and Barrington Excavating were run by father and son could imply notice. *See Sullivan v. Running Waters Irrigation, Inc.*, 739 F.3d 354, 357 (7th Cir. 2014) (noting notice may be actual or "implied from a variety of circumstances, such as common control or proximity"). Neither Sinnett Excavating nor Barrington Excavating responded to the notices, participated in the hearing, nor moved to vacate the JGC's determination.[2] Barrington Excavating does not explain these facts, but solely states that "there is no reason that sending Barrington random grievance emails would trigger any duty to act." (Dkt. 22 at 14). Drawing all reasonable inferences in favor of Local 150, if Barrington Excavating had notice of the JGC proceedings and determination, then its challenges to the awards including that (1) they were not a party to the CBA or otherwise bound; (2) they were not a party to the JGC proceedings; (3) the CBA was terminated; and (4) the JGC had no jurisdiction over them are waived, even if there is merit to their contentions. Barrington Excavating can later dispute notice, but it is inappropriate for the Court to resolve this fact-specific issue at this juncture. The Court will also defer discussion of the effect of the CBA's $50,000 damages-cap while this issue is outstanding.

Barrington Excavating counters by noting Local 150 brought the grievances against the now-defunct Sinnett Excavating, not Barrington Excavating. This fact, however, is not fatal on its face as (1) the JGC found Barrington Excavating to be the successor of Sinnett Excavating; (2)

---

[2] The 90 days would begin to run once Barrington Excavating had notice of the determination. That may have been when they received a copy of the June 7, 2023 determination, which would place the limitations date in September 2023, or when Local 150 filed this complaint and attached a copy of the determination in October 2023, which would be in January 2023. *See Rock-It Interiors, Inc.*, 190 F. Supp. 3d at 811.

Local 150 pleads sufficient facts to infer Barrington Excavating was bound to Sinnett Excavating's obligations; and (3) this argument does not address if Barrington Excavating had notice of the award or why it never moved to vacate the award, even after this lawsuit initiated.

First, Courts are highly deferential to joint grievance committees' rulings. *Ganton Techs., Inc.* 358 F.3d at 462; *Merryman Excavation, Inc.*, 639 F.3d at 293 (holding that courts should not review a joint grievance committee's decision when the parties' CBA provides a committee with plenary power to resolve disputes). The JGC found that Barrington Excavating was party to the CBA after hearing evidence demonstrating it was a continuation of Sinnett Excavating. (Dkt 1 ¶ 12; Dkt. 1-1 at 172). Therefore, the Court's review is quite limited and further restrained by the possibility of Barrington Excavating's waiver of arguments not brought to the attention of the JGC.

Second, Local 150 pleads that Barrington Excavating is the successor to Sinnett Excavating and operates as a continuation of the previous business. "Successor liability is an equitable doctrine that can be used to hold one entity responsible for the obligations of another where there are sufficient indicia of continuity between the two entities and the alleged successor has notice of the predecessor's liability." *Teamsters Loc. Union No. 727 Health & Welfare Fund v. De La Torre Funeral Home & Cremation Servs., Inc.*, 2023 WL 4664918, at *7 (N.D. Ill. July 20, 2023) (citing *E. Cent. Ill. Pipe Trades Health & Welfare Fund v. Prather Plumbing & Heating, Inc.*, 3 F.4th 954, 956–57 (7th Cir. 2021)). Here, Local 150 alleges that Barrington Excavating is owned by Sinnett Sr.'s son, was formed two weeks after the dissolution of Sinnett Excavating, lists the same business address, uses the same equipment, engaged in the business of excavating, and has "substantially identical operations [and] business purpose." (Dkt 1 at 5–6).

Further, Local 150 pleads the CBA itself contemplates and binds a successor. *See* CBA Art. I, § 10; *Int'l Union of Operating Eng'rs v. Centor Contractors, Inc.*, 831 F.2d 1309, 1313 n.3

9

(7th Cir. 1987) (holding a newly formed partnership was a successor because, in part, the collective bargaining agreement adopted by the parties to this case expressly bound their "successors and assigns"). Drawing all reasonable inferences in Local 150's favor, at this point it could be said that "[l]ittle changed, except the name on the door" between Sinnett Excavating and Barrington Excavating. *Laborers' Pension Fund v. Total Home Restoration 1*, 2022 WL 4079459, at *14 (N.D. Ill. Sept. 6, 2022), *aff'd sub nom. Laborers' Pension Fund v. Ciccone*, 2024 WL 107885 (7th Cir. Jan. 10, 2024). Accordingly, in addition to the deference to the JGC findings and potential waiver of other defenses, at this stage it is possible that Barrington Excavating is the successor to Sinnett Excavating and is responsible for the JGC awards. And discussed above, Barrington Excavating would also be bound if they had notice of the JGC proceedings and determination yet failed to challenge the awards.

In any event, none of Barrington Excavating's arguments explain why it never moved to vacate the award against it, even after the initiation of the instant lawsuit in October 2023. It may be that Barrington Excavating decided to engage in the "high stakes gamble" *Rabine* cautioned against.

## II. Laches

Finally, Barrington Excavating argues Local 150's complaint should be dismissed under the doctrine of laches. "In order to succeed under the doctrine of laches, a defendant must show that: (1) plaintiffs unreasonably delayed in asserting their rights, and (2) the delay harmed defendants. *Chicago Reg'l Council of Carpenters Pension Fund v. Carlson Constructors Corp.*, 2022 WL 874608, at *20 (N.D. Ill. Mar. 24, 2022) (citing *Bd. of Trustees of the Pipe Fitters Ret. Fund, Loc. 597 v. Am. Weathermakers, Inc.*, 150 F. Supp. 3d 897, 908 (N.D. Ill. 2015)). Laches is an affirmative defense, so the party asserting it bears the burden of proof. *Dore*, 2017 WL 3581159, at *11 (citing *Bauer v. J.B. Hunt Trans., Inc.*, 150 F.3d 759, 763 (7th Cir. 1998)).

As complaints "need not anticipate and attempt to plead around defenses," *United States v. N. Tr. Co.*, 372 F.3d 886, 888 (7th Cir. 2004), a motion to dismiss based on laches should be granted only if (1) an unreasonable delay appears on the face of the pleading; (2) no sufficient excuse for delay appears or is pleaded; and (3) the motion specifically points out the defect. *See Arclar Co. v. Gates*, 17 F. Supp. 2d 818, 823 (S.D. Ill. 1998); *Suggs v. United States*, 256 F. App'x. 804, 805 (7th Cir. 2007); *see also Topping v. Fry*, 147 F.2d 715 (7th Cir. 1945); 5 WRIGHT & MILLER, FED. PRAC. & PROC. § 1277 (3d ed. 2017). ("[T]he defense of laches . . . involves more than the mere lapse of time and depends largely upon questions of fact.").

Here, Local 150 pleads that it accepted Sinnett Excavating's contention that it was closing, until Local 150 was later alerted to non-compliance with the CBA in March 2023. Whether Local 150 knew of Barrington Excavating's existence and relation to Sinnett Excavating at this point is speculative. Further, even if Local 150 knew of Barrington Excavating's existence, Local 150 would have no reason to bring grievances unless it discovered Barrington Excavating was not complying with the CBA. Local 150's complaint does not plead themselves out of court by stating their laborers performed work for Barrington Excavating between 2021 and 2023, knew of the relationship between Sinnett Excavating and Barrington Excavating, and knew of violations of the CBA. Whether Local 150's delay in enforcing the CBA was unreasonable is a fact-dependent question unsuitable for a motion to dismiss.

## CONCLUSION

For the foregoing reasons, Barrington Excavating's motion to dismiss [12] is denied.

11