**THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

INTERNATIONAL UNION OF OPERATING        )
ENGINEERS, LOCAL 150, AFL-CIO,          )
                                        )        No. 23 C 15257
          *Plaintiff*                   )
     v.                                 )        Chief Judge Virginia M. Kendall
                                        )
BARRINGTON EXCAVATING, LLC              )
                                        )
          *Defendant*.                  )

**OPINION AND ORDER**

In June 2023, a Joint Grievance Committee issued an arbitration award (the "JGC award") against Sinnett Excavating, Inc. Plaintiff International Union of Operating Engineers, Local 150, AFL-CIO ("Local 150") alleges that Defendant Barrington Excavating, LLC is a successor business of Sinnett Excavating, and therefore, is liable for the JGC award. In October 2023, Local 150 filed an action, under § 301 of the Labor-Management Relations Act ("LMRA") to enforce the JGC award against Barrington. (Dkt. 1). In response, Barrington petitioned to vacate the JGC award—alleging that the arbitration process was corrupted. (Dkt. 45). Now, Local 150 moves to dismiss Barrington's Petition to Vacate. (Dkt. 51). For the following reasons, the Court denies Local 150's Motion to Dismiss [51].

**BACKGROUND**

The Court assumes familiarity with its April 22, 2024, Order denying Barrington's Motion to Dismiss Local 150's lawsuit. (Dkt. 32). On June 7, 2023, the JGC issued an arbitration award against Sinnett Excavating. (Dkt. 45-1); (Dkt. 45-2). The JGC determined that Sinnett Excavating violated a Collective Bargaining Agreement ("CMA") it had entered with Local 150, when both parties signed a Memorandum of Agreement ("MOA") in 1995. (*Id.*)

1

Barrington argues in its Petition that there is no basis to enforce the June 2023 JGC award against it. First, in May 2021, prior to the JGC's ruling, Sinnett Excavating dissolved as a corporation; this extinguished any agreement that existed between Local 150 and the company. (Dkt. 45 at 16) Second, even if it had not dissolved, the parties terminated the 1995 MOA on February 5, 2021. (*Id.*) This agreement, which Barrington was not a signatory of, was the basis for the JGC award. (*Id.*) Finally, the JGC never even referenced Barrington in its award—it only named Sinnett Excavating. (Dkt. 64 at 2; Dkt. 45-1). Because Barrington is not Sinnett Excavating's successor in liability, it is not responsible for paying the JGC award. (Dkt. 45 at 6); (Dkt. 64 at 8–9).

Local 150 alleges Barrington's Petition must be dismissed because it is time-barred. (Dkt. 51 ¶ 9). Barrington received notice of the JGC award against Sinnett Excavating on October 30, 2023, at the latest. (*Id.* ¶ 13). Though it does not explain this in its Motion, Local 150 also contends that Sinnett Excavating and Barrington "have substantially identical operations, business purpose, locations, contact information, equipment, supervision, services, common financial control, and centralized control of labor relations." (Dkt. 1 at 5). Because it is a successor in liability to Sinnett Excavating, it alleges that Barrington must pay the award. (*Id.*)

The history of Barrington's operations is as follows: Scott Sinnett operated a business called "Sinnett Excavating, LLC" until May 2021, when Sinnett dissolved the business. (Dkt. 1 at 5). Two weeks later, Scott Sinnett II, Scott Sinnett's son began operating a business under the name "Barrington Excavating, LLC." (*Id.*) According to Local 150, as the successor to Sinnett Excavating, because Barrington failed to timely challenge the award, the Court should dismiss its Petition under Rule 12(b)(6). (Dkt. 51 ¶ 12).

2

**LEGAL STANDARD**

To survive a motion to dismiss for failure to state a claim, the complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *Kaminski v. Elite Staffing*, 23 F.4th 774, 776 (7th Cir. 2022) (quoting Fed. R. Civ. P. 8(a)(2)). Specifically, "a plaintiff must allege 'enough facts to state a claim that is plausible on its face.' " *Allen v. Brown Advisory*, *LLC*, 41 F.4th 843, 850 (7th Cir. 2022) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)).

At the same time, "allegations in the form of legal conclusions are insufficient to survive a Rule 12(b)(6) motion." *McReynolds v. Merrill Lynch & Co., Inc.*, 694 F.3d 873, 885 (7th Cir. 2012) (citing *Iqbal*, 556 U.S. at 678). As such, "[t]hreadbare recitals of the elements of the cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Further, the moving party bears the burden of establishing the insufficiency of the plaintiff's allegations. *Marcure v. Lynn*, 992 F.3d 625, 631 (7th Cir. 2021).

**DISCUSSION**

Before proceeding to the merits, the Court will address Barrington's suggestion that the Court lacks subject-matter jurisdiction to enforce the JGC award against it. (Dkt. 64 at 11).

**I.    Subject-matter Jurisdiction**

Barrington claims that because the JGC award against Sinnett Excavating was improper, the Court lacks subject-matter jurisdiction to rule on Local 150's claim. (*Id*. at 11–12). This is incorrect. Section 301 of the LMRA "creates federal jurisdiction over suits to enforce labor contracts." *Chicago Typographical Union No. 16 v. Chicago Sun-Times, Inc.*, 935 F.2d 1501, 1503

3

(7th Cir. 1991); *Merryman Excavation, Inc. v. Int'l Union of Operating Eng'rs, Loc. 150*, 639 F.3d 286, 290 (7th Cir. 2011) (writing that "[a] failure to comply with a joint committee award is a breach of a federal labor contract subject to section 301 jurisdiction"); *see also Int'l Bhd. of Elec. Workers, Loc. 481 v. Sign-Craft, Inc.*, 864 F.2d 499, 502 (7th Cir. 1988) ("under § 301(a) any disputes about the meaning or validity of collective bargaining agreements come within the jurisdiction of the federal courts.").

In the LMRA context, when a plaintiff alleges that an employment contract existed, the court has jurisdiction "to determine the matter." *Baker v. Fleet Maint., Inc.*, 409 F.2d 551, 554 (7th Cir. 1969). Further, in seeking to vacate an award, a plaintiff "normally will be pointing to implicit or explicit limits that the contract places on the arbitrator's authority—principally that he was to interpret the contract and not go off on a frolic of his own—and arguing that the arbitrator exceeded those limits." *Chicago Typographical*, 935 F.2d at 1503. This sort of argument directly implicates Section 301. *Id*. Even in cases where a plaintiff seeks to set aside an award based on allegations outside of the contract, however, the Court still has jurisdiction. *Id*.

Here, there is seemingly no dispute that a legitimate contract existed between Local 150 and Sinnett Excavating, at least at some point. (Dkt. 45 at 15). The Court is asked: (i) to assess whether the arbitrator "exceeded" its authority in construing the contract between Local 150 and a dissolved corporation (Sinnett Excavating) and (ii) to determine if the CBA also binds Barrington as a successor in liability. This alone is sufficient to give the Court jurisdiction because the Court has a right to determine the bounds of the contract. *Baker*, 409 F.2d at 554.

But even if one characterized Barrington's argument as offering only a "noncontractual" basis to vacate the award—one which does not demand the Court to interpret the CBA—the Court would still have subject-matter jurisdiction. As the Court emphasized in *Chicago Typographical*,

4

the grounds for asking a federal court to vacate an arbitration award are immaterial. 935 F.2d at 1503. Instead, Section 301 "can and should be stretched a bit to embrace *all* suits arising out of awards by arbitrators appointed under labor contracts, whether it is a suit to enforce or to set aside the award, and if the latter whether the suit is based on contractual or noncontractual grounds." *Id*. (emphasis in the original). Accordingly, the Court has subject-matter jurisdiction.

## II. Merits

Judicial review of a labor arbitration award is "very limited." *Ameren Ill. Co. v. Int'l Bhd. of Elec. Workers*, 906 F.3d 612, 616 (7th Cir. 2018) (quoting *United Steelworkers of Am. v. Am. Mfg. Co.*, 363 U.S. 564, 567 (1960)). The Court may, however, set aside an arbitration award when the arbitrator has exceeded his authority under a controlling CBA. *See, e.g.*, *Carey v. Westinghouse Elec. Corp.*, 375 US 261, 272 (1964); *Advance Cast Stone Co. v. Bridge, Structural and Reinforcing Iron Workers, Local Union No. 1*, 376 F.3d 734, 743 (7th Cir. 2004).

Here, Barrington argues that the JGC exceeded its authority because it ignored that the MOA had been terminated when it issued its award against Sinnett Excavating. (Dkt. 45 at 16–17). It further alleges that the JGC exceeded its authority by blatantly awarding more than what the CBA expressly provides for. (Dkt. 64 at 12). Notwithstanding the JGC's "fraudulent" decision to award Local 150 damages based a terminated agreement, Barrington also contends that there is no basis for Local 150 to pursue claims against it because Barrington never signed or negotiated the now-terminated CBA agreement. (Dkt. 45 at 16–17).

Local 150 contends that the Court must dismiss Barrington's petition to vacate because the claim is time-barred. (Dkt. 51 ¶ 12). Because the relevant statute, 29 U.S.C. § 185(a), does not explicitly set forth a statute of limitations for challenging an arbitration award, the Court must "look to the statute of limitations for a comparable action in the forum state." *Teamsters Local No.*

*579 v. B & M Transit, Inc.*, 882 F.2d 274, 276 (7th Cir.1989) (citations omitted); *see UAW v. Hoosier Cardinal Corp.*, 383 U.S. 696, 704–05, 86 (1966) ("[T]imeliness of a § 301 suit . . . is to be determined, as a matter of federal law, by reference to the appropriate state statute of limitations.").

In this state, the Illinois Arbitration Act, which provides for a 90-day limitations period is most comparable to the federal law. *Plumbers' Pension Fund, Local 130, U.A. v. Domas Mech. Contractors, Inc.*, 778 F.2d 1266, 1269 (7th Cir. 1985) (explaining that the Illinois Arbitration Act is "closely analogous" to an arbitration clause in a CBA and therefore, a 90-day limitations period is appropriate); 710 ILCS 5/12(b) (a motion to vacate an arbitration award "shall be made within 90 days after delivery of a copy of the award to the applicant"). The Court, therefore, evaluates timeliness by determining whether a claimant brought his petition within 90 days of receiving a copy of the JGC award.

Local 150 argues that at the very latest, Barrington received notice of the JGC awards on October 30, 2023. (Dkt. 51 ¶ 13). Assuming this is true, and that Barrington is liable for an award against Sinnett Excavating, because Barrington waited until September 19, 2024—well passed the 90-day statute of limitations—its claim would have lapsed. (Dkt. 45 at 19). Moreover, when a party neglects to challenge an arbitration decision within the applicable statute of limitations, the award becomes final—therefore, Local 150 contends that the Court should dismiss Barrington's petition to vacate the JGC award. *See Sullivan v. Lemoncello*, 36 F.3d 676, 681 (7th Cir. 1994).

The problem with Local 150's claim is that it skips the liability question entirely and goes straight to the question of procedural default. Barrington does not dispute that it received notice of the JGC award in October 2023. (Dkt. 45 at 15). It contends, however, that this "notice," which would have started 90-day clock, was for a JGC award against Sinnett Excavating—a corporation,

6

which dissolved prior to the award's issuance. (*Id*. at 15–16). Local 150 never named Barrington in any grievance before the JGC. (Dkt. 45 at 15–16). And because the JGC does not name Barrington in its findings, Barrington could not have been on notice to challenge the award. (*See* Dkt. 45-1; Dkt. 45-2).

Barrington's argument rests on the idea that it is not a successor in liability to Sinnett Excavating. (Dkt. 64 at 1, 8). Successor liability is "an equitable doctrine that 'provides an exception from the general rule that a purchaser of assets does not acquire a seller's liabilities.' " *Grasty v. Cambridge Integrated Servs. Group, Inc.*, Nos., 2014 WL 5543933, at *5 (N.D. Ill. November 3, 2014) (quoting *Chi. Truck Drivers, Helpers & Warehouse Workers Union (Indep.) Pension Fund v. Tasemkin, Inc.*, 59 F.3d 48, 49 (7th Cir. 1995)). The doctrine ensures that a company cannot escape liability "by selling its assets . . . and then dissolving" as Local 150 alleges that Barrington did here. *Teed v. Thomas & Betts Power Sols., L.L.C.*, 711 F.3d 763, 766 (7th Cir. 2013). Whether a successor business is liable for its predecessor's debts "depends on the particular facts and the legal duties at stake . . ." *Indiana Elec. Workers Pension Benefit Fund v. ManWeb Servs., Inc.*, 884 F.3d 770, 776 (7th Cir. 2018); *Tasemkin, Inc.*, 59 F.3d at 49 (explaining that when applying successor liability, an "emphasis on the facts of each case as it arises is especially appropriate"); *See Int'l Union of Operating Eng'rs v. Centor Contractors, Inc.*, 831 F.2d 1309, 1313 n.3 10 (7th Cir. 1987).

Here, when the factual record is still undeveloped, it is premature for the Court to determine whether Barrington qualifies as a successor in liability to Sinnett Excavating. *See Sheet Metal Workers Int'l Ass'n Loc. Union No. 1 v. Grimm Heating & Air Conditioning*, Inc., No. 12-1250, 2013 WL 12241281, at *2 (C.D. Ill. July 11, 2013) (concluding that whether a non-signatory is a party to a CBA is a factual question for the district court). In Barrington's answer, which it attached

to the counterclaim, it denies Local 150's allegation that it "ha[s] substantially identical operations, business purpose, locations, contact information, equipment, supervision, services, common financial control, and centralized control of labor relations" to Sinnett Excavating. (Dkt. 45 at 6). Though it does not dispute the familial relationship between the two companies' owners, Barrington contends it was not privy to the CBA's negotiations or signing. (*See* Dkt. 64 at 11–12). This leaves open factual disputes between the two parties, which would determine whether the successive liability doctrine applies.

The still open question of Barrington's liability for the award is fatal to Local 150's notice argument. (Dkt. 64 at 10). Local 150 points to no caselaw to support a proposition that a company like Barrington, which is not mentioned or named in the JGC award, is "on notice" to challenge that award for statute of limitation purposes—especially when its successor liability status is disputed. In situations where a successor entity *is mentioned* in an arbitration award, courts have found that the successor is on notice once it learns that JGC finds it sufficiently similar to its predecessor. *Illinois Dist. Council No. 1 of Int'l Union of Bricklayers & Allied Craftworkers, AFL-CIO v. Christoffer*, No. 06 C 0321, 2006 WL 2583724, at *2 (N.D. Ill. Sept. 5, 2006); *Cent. States, Se. & Sw. Areas Pension Fund v. Sara Lee Bakery Grp., Inc.*, 660 F. Supp. 2d 900, 910 (N.D. Ill. 2009). For example, in *Union of Bricklayers*, a district court determined on summary judgment that a non-party to a CBA was nonetheless on notice of the award, and therefore subject to the statute of limitations to raise challenges to it, after the JGC determined the non-party was "one and the same and jointly responsible for the contracts and obligations" of a CBA signatory entity. 2006 WL 2583724, at *2. In that case, the court relied on *Int'l Union of Operating Eng'rs, Loc. 150, AFL-CIO v. Rabine*, in which the Seventh Circuit explained that "when a defendant fails to articulate a reason why it needed more than the ninety days, and relies instead on a newly alleged

8

and collaterally raised failure of arbitral jurisdiction, a federal court will ignore the defense and enforce the judgment of the arbitrator." 161 F.3d 427, 432 (7th Cir. 1998) (citations omitted).

Unlike in *Union of Bricklayers* where the non-signatory was identified in the arbitrator's findings, here, the JGC did not identify the non-signatory entity (i.e., Barrington) in the award. (*See* Dkt. 1-7, Exhibit G) (Joint Grievance Committee Decision). Barrington did not yet exist, and therefore, the JGC did not contemplate its liability. Because the parties dispute fundamental facts about the businesses' similarities, there is insufficient certainty in the factual record to apply the doctrine of successor liability. (Dkt. 64 at 12). Further, *Rabine* would not apply here because Barrington could not have challenged an award that does not reference it. 161 F.3d at 432.

If the Court determines, after discovery, that Barrington is a successor in liability to Sinnett Excavating, it may still be liable for the award and Local 150's statute of limitations argument could apply. Because the JGC in this case, however, made no findings as to Barrington's relationship to Sinnett Excavating, there is insufficient evidence to conclude that Barrington was "on notice" for purposes of challenging an award, which does not even mention the company. (Dkt. 1-7). Therefore, Local 150's timeliness argument fails.

## CONCLUSION

For the reasons set forth above, the Court denies Local 150's Motion to Dismiss [51].

_____
Virginia M. Kendall
United States District Judge

Date: March 13, 2025